GRAIN DEALERS MUTUAL INSURANCE COMPANY
*v.* Helen PORTERFIELD, Individually and as
Administratrix of the ESTATE of Vernie PORTERFIELD,
Deceased

85-56                                              695 S.W.2d 833

Supreme Court of Arkansas
Opinion delivered September 23, 1985

*Boswell, Tucker & Smith*, for appellant.

*Curtis E. Rickard*, for appellees.

STEELE HAYS, Justice. This is a wrongful death case. Helen Porterfield, appellee, brought suit for herself and the estate of her husband, Vernie Porterfield, who was electrocuted on July 19, 1983, while working at the football stadium of Malvern High School. Mrs. Porterfield filed suit against Grain Dealers Mutual Insurance Company, appellant, the public liability carrier of the Malvern Special School District. By third party complaint, Arkansas Power and Light Company was made a party defendant.

The issues of negligence and comparative fault were submitted to the jury by special interrogatories and a verdict of $131,127 was returned. The jury apportioned negligence between the parties at 75 percent to Malvern Special School District, 20 percent to Vernie Porterfield, and 5 percent to Arkansas Power and Light Company. Grain Dealers Mutual has appealed on the basis of three points of error: the testimony of E.L. Cody, called by appellee as an expert witness, should have been stricken; the trial court should have granted a defense motion for a directed

verdict because there was no proof that negligence of the school district was a proximate cause of Vernie Porterfield's death; and a mistrial should have been granted because counsel for Helen Porterfield told the jury in closing argument that if they found Vernie Porterfield fifty percent at fault that "ended the matter."

We need not reach the first and third points, as we agree with appellant that the trial court should have directed a verdict for the defendants at the close of the plaintiff's case because there was no proof that any negligence by the defendants was a proximate cause of the death of Vernie Porterfield.

■■ The test concerning the granting of a motion for a directed verdict by the trial court has been clearly stated. The evidence, with all reasonable inferences, is viewed in the light most favorable to the party opposing the motion, and given its highest and strongest probative value. When viewed in that light if the evidence is so lacking in substance that it would require that a jury verdict be set aside, the motion must be granted. *Pritchard v. Times Southwest Broadcasting, Inc.*, 277 Ark. 458, 642 S.W.2d 877 (1982); *Cowling v. Clinton Board of Education*, 273 Ark. 214, 618 S.W.2d 158 (1981). Evidence is said to be substantial when it "is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or a conjecture." Ford on Evidence, Vol. 4, Paragraph 549, page 276; *DuPont v. Dillaha*, 280 Ark. 477, 659 S.W.2d 756 (1983).

The facts of the case are largely undisputed. In December of 1982 a tornado destroyed the press box of the football stadium at Malvern High School. The stadium had been built in 1936 by the WPA, and the press box contained a wiring system commonly used in that day, known as a two-wire Romex. With the adoption of the National Electrical Code about fifteen years ago, a three-wire system would have been required for the press box, the third wire providing a ground. The National Electrical Code was adopted by a Malvern City Ordinance.

When the press box was rebuilt in early 1983, two employees from the maintenance crew of the school district were assigned the task of rebuilding the press box. Although they realized that new construction required a three-wire system they installed a

two-wire system since that was the system originally installed. No permit was obtained by the school district and, hence, there were no interim or final inspections of the electrical system as would have been required with a permit.

After the press box was rebuilt Mr. James McDonald was employed to construct a metal stairway at the rear of the stadium leading to the press box. Mr. McDonald hired Vernie Porterfield to help him and together they had completed the stairway, with the exception of the handrails.

Vernie Porterfield was working alone installing the handrails on the morning of the accident. He had arrived about 7:30 and parked his welding truck near the press box, draping the welding leads over a chain link fence adjacent to the stairway with one of the lead wires clamped to the metal stairway.

At about 10:30 a teacher for the district, Mr. M.D. Kennedy, noticed Mr. Porterfield slumped down between the chain link fence and the metal stairway. He began administering CPR although he could find no pulse or other vital signs. An ambulance attendant pronounced Mr. Porterfield dead some fifteen minutes later. Before the power was turned off Mr. Kennedy received a strong shock when he touched the fence. Others felt a light shock on touching the stairway. Mr. Porterfield's grinder was found on a landing about halfway up the metal stairs plugged into a homemade extension cord belonging to Mr. Porterfield and probably made by him. The extension cord was plugged into a receptacle in the press box. The grounding prong on the male plug of the extension cord had been snipped off and the plug was inserted in the receptacle upside down, so that the polarity was reversed. Tests performed with a voltameter by an AP&L employee shortly after the accident showed the stairway was energized by 120 volts of electricity. The meter did not detect any voltage in the chain link fence.

The plaintiff's theory of negligence was that in rebuilding the press box the district had failed to obtain a permit and had failed to ground the electrical system in accordance with the National Electrical Code, there being no ground from the grounding terminal in the breaker panel to the receptacle in the press box where Vernie Porterfield had plugged in his extension cord. That theory of liability was negated, however, by the

undisputed fact that Vernie Porterfield's extension cord was plugged into the receptacle upside down, which could not have occurred if the grounding prong had not been removed. There was no disagreement among the electrical experts, whether called by the plaintiff or the defendants, that if the extension was in fact plugged in upside down, the absence of a completed ground in the electrical system of the press box meant nothing, as the presence of a ground would not have prevented the accident. This proof was undisputed and enables appellant to argue that proximate cause, an essential element of the plaintiff's case, is fatally lacking. We sustain the argument.

We have searched the record in vain for proof of proximate cause that might support the verdict. Nor has appellant in oral argument or written brief shown us where that proof is to be found. Citing AMI 501, appellant points out that causation need not rest on a single source, that two or more causes may work together to produce a result. Granted, but our problem with the proof is not choosing one of several possible causes, rather it is the absence of proof of *any* cause attributable to the defendants, of which it could be said except for this, Vernie Porterfield would not have died. The quantum of proof of causation is discussed in Prosser and Keeton on Torts, Fifth Edition, § 41, p. 269:

> On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. Where the conclusion is not one within common knowledge, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn.

We are cited to the opinion testimony of Mr. E. L. Cody, Superintendent of the Benton Electrical Department, that the stairs themselves should have been grounded because if someone were working with electrical tools and a leak occurred,

energizing the stairs, no fuse could have blown because there was no ground path back to the panel box. But when we have given that testimony its strongest probative value, it comes up short because Mr. Cody failed to state an opinion, directly or fairly implied, that had the stairs been grounded Vernie Porterfield would not have been electrocuted. We cannot reach that crucial inference without supporting testimony, as it would require a knowledge of electricity which neither we nor the jury can be expected to possess, and the plaintiff's failure to provide that proof was fatal to the case.

The judgment is reversed and the cause is dismissed.

PURTLE, J., not participating.