Sandra G. **WILDER,** Plaintiff, Appellee,

v.

Warren F. **EBERHART, M.D.,**
and **Concord Clinic, Inc.,**
Defendants, Appellants.

No. 92–1274.

United States Court of Appeals,
First Circuit.

Heard July 27, 1992.

Decided Oct. 8, 1992.

Robert M. Larsen, with whom William D. Pandolph and Sulloway Hollis & Soden, Concord, N.H., were on brief, for defendants, appellants.

John Pierce Kalled, with whom Douglas P. Hendrickx and Kalled Law Offices, Ossipee, N.H., were on brief, for plaintiff, appellee.

Before TORRUELLA and STAHL, Circuit Judges, and HORNBY,* District Judge.

TORRUELLA, Circuit Judge.

Doctor Warren F. Eberhart, ("Dr. Eberhart") appeals an adverse judgment rendered in this medical malpractice action, stemming from a suit filed by his former patient Sandra Wilder ("Ms. Wilder"). On appeal, Dr. Eberhart raises the issue of whether the district court committed reversible error in excluding and/or limiting rebuttal expert testimony to that which could be expressed quantifiably in terms of "probability." Because we agree with Dr. Eberhart, that the district court erred in limiting his defense expert's testimony, we vacate the judgment and remand for a new trial.

## BACKGROUND

On May 21, 1985, Ms. Wilder, a Vermont resident, saw Dr. Eberhart in his Concord New Hampshire office for consultation regarding Ms. Wilder's obesity and the medical options available to control her weight problem. Following the consultation, Dr. Eberhart determined that Ms. Wilder was a

* Of the District of Maine, sitting by designation.

candidate for a vertical banded gastroplasty ("VBG") or vertical stapling of the stomach. Ms. Wilder was admitted to the Concord Hospital on June 11, 1985, under the care of Dr. Eberhart. The following day, June 12, 1985, Dr. Eberhart performed the VBG on Ms. Wilder. The procedure went uneventfully until near the end when Dr. Eberhart noticed a 3 to 3.5 centimeter tear in Ms. Wilder's lower esophagus. The tear was repaired by suturing the tear and then suturing a fold of the gastric tissue around the tear site for additional support—a procedure known as a Nissen fundoplication. Following the operation, Ms. Wilder was sent to the recovery room.

On the following day, June 13, 1985, Dr. Eberhart determined that there was still leakage at the lower esophagus. He operated again that same day and discovered two tears in Ms. Wilder's lower esophagus. The tears were repaired. On June 20, 1985, Dr. Eberhart decided to operate again when an X-ray revealed that the lower esophagus and upper stomach were not healing properly. During the operation, it was discovered that the lower esophagus and upper stomach were no longer viable. Thus Dr. Eberhart removed that dead tissue and sewed the upper side of the stomach closed. The remainder of the stomach was reconnected to the esophagus. Eventually, Ms. Wilder was transferred to the Dartmouth–Hitchcock Medical Center, where she remained hospitalized for 101 days until her release in November of 1985.

Ms. Wilder filed this diversity suit in the United States District Court for the District of New Hampshire against Dr. Eberhart and the Concord Clinic alleging amongst other things negligence on behalf of Dr. Eberhart in mobilizing the esophagus during surgery, causing her recurring esophageal injury. A jury awarded Ms. Wilder $685,000 in damages.

## The Trial
### Expert Testimony

Dr. Saul Frank Weinstein ("Dr. Weinstein"), a general surgeon from Philadelphia, testified via video deposition as plaintiff's expert. Dr. Weinstein categorically ruled out any possibility that instrumentation could have caused the injury to Ms. Wilder's esophagus. Further, he concluded without reservation that the sole cause of the esophageal injury was mobilization of the esophagus by Dr. Eberhart during the VBG procedure.

On the fourth day of trial, three days after the video deposition of Dr. Weinstein was presented, the defendants were prepared to introduce their expert witnesses, Dr. David J. Sugarbaker ("Dr. Sugarbaker"), Assistant Professor of Surgery at Harvard Medical School and Chief of Thoracic Surgery at Brigham and Women's Hospital, and Dr. Edward Mason ("Dr. Mason"), the developer of the VBG technique. Both were prepared to testify that other "possible" causes of the esophageal injury [1] existed. Just moments before Dr. Sugarbaker's testimony, Ms. Wilder's counsel filed a Second Motion in Limine seeking to exclude any opinion testimony by defendants' experts that could not be expressed in terms of "probability" as distinguished from "mere possibility."

Ms. Wilder's counsel argued that by presenting evidence of particular possible causes of the injury, defendant was raising an affirmative defense which shifted the burden to Dr. Eberhart to prove that another cause, other than manipulation of the esophagus during surgery, was more probably than not the cause of the tears to the esophagus. Defense counsel argued that it was entitled to put on testimonial evidence to the effect that no one, including Ms. Wilder's expert, Dr. Weinstein, should be able to say more probably than not the cause of the tears to the esophagus was

---

1. Defendants' experts were to testify as to each possible cause of Ms. Wilder's esophageal tear. Moreover, the experts were going to rank the possibilities in order of likelihood, reflecting the most likely causes. Out of this ranking, the defendants' experts would conclude that the most likely cause of Ms. Wilder's injury was the passage and manipulation by the anesthesiologist of certain instruments—the Nasogastric tube or the Maloney dilator—through or in the esophagus, and correspondingly, that the least likely of the possible causes was mobilization of the esophagus by Dr. Eberhart.

manipulation or mobilization of the esophagus. Defense counsel also argued that the burden of proof regarding causation did not shift to the defense, and further, that defense experts were entitled to testify as to other possible causes of the esophagus tears in rebuttal of the claims made by plaintiff's witnesses.

## STANDARD OF REVIEW

■ Generally, the decision whether or not to admit expert testimony is a matter within the sound discretion of the trial judge. *Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Int'l*, 851 F.2d 540, 544 (1st Cir.1988) (citing *Lynch v. Merrell–National Laboratories*, 830 F.2d 1190, 1196–97 (1st Cir.1987)); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 703[1], at 703–04 (1987). The trial judge's decisions will not be disturbed absent a clear abuse of that discretion or an error of law. *Id.* (citing *DaSilva v. American Brands, Inc.*, 845 F.2d 356, 361 (1st Cir.1988)). We find that the trial judge committed clear error in prohibiting defendant's experts from testifying as to other possible causes in rebuttal of Dr. Weinstein's testimony, and thus we vacate and remand the case for a new trial.

## DISCUSSION

■ Plaintiff's Second Motion in Limine cited *Emerson v. Twin State Gas and Electric Co.*, 87 N.H. 108, 174 A. 779 (1934), for the proposition that "the opinion testimony of a physician is admissible if stated within reasonable medical probability." In granting plaintiff's Second Motion in Limine to limit the testimony of Drs. Sugarbaker and Mason, the trial judge agreed with the defendants that the burden of proof did not shift, yet he cited *Bentley v. Adams*, 100 N.H. 377, 128 A.2d 202 (1956) and *Brann v. Exeter Clinic, Inc.*, 127 N.H. 155, 498 A.2d 334 (1985), concluding that to admit testimony of possibilities would result in "reversible error." (Tr.

Vol. 4 p. 52). This effectively shifted the burden somewhat to the defendant, because he now had to prove more probably than not, that another cause, not manipulation, was the cause of Ms. Wilder's injury. Besides finding that these cases stand for other principles inapplicable to the facts presented by this case,[2] our review of applicable case law leads us to but one conclusion; that the trial court committed a clear error of law in excluding defendants' expert rebuttal testimony.

■ It is well settled under New Hampshire law that the burden of proof with respect to causation in a medical malpractice case rests and remains with the plaintiff. *Pillsbury–Flood v. Portsmouth Hospital*, 128 N.H. 299, 512 A.2d 1126, 1129 (1986). Moreover, proximate causation between negligence and the injury complained of in a medical malpractice case must be established by expert testimony. *Martin v. Wentworth–Douglass Hospital*, 130 N.H. 134, 536 A.2d 174, 176 (1987). On the other hand, the defendant need not disprove causation. Rather, he must produce credible evidence which tends to discredit or rebut the plaintiff's evidence. *Tzimas v. Coiffures By Michael*, 606 A.2d 1082, 1084 (N.H.1992). As the New Hampshire Supreme Court recently stated in *Tzimas*, the plaintiff in a negligence action bears the burden of producing evidence "to prove that it is more likely than not that [plaintiff's] injury was" caused by the defendant's negligence. *Tzimas*, 606 A.2d at 1084. Defendant need not prove another cause, he only has to convince the trier of fact that the alleged negligence was not the legal cause of the injury. *Id.* In proving such a case, a defendant may produce other "possible" causes of the plaintiff's injury. These other possible causes need not be proved with certainty or more probably than not. To fashion such a rule would unduly tie a defendant's hands in rebutting a plaintiff's case, where as here, plaintiff's expert testifies that no other cause could have caused plaintiff's injury. The burden

**2.** These cases generally refer to the plaintiff's burden of proof; that the plaintiff must prove his case within a reasonable degree of medical certainty. They are silent as to whether or not a defendant in a medical malpractice action or any negligence action may present "possibility" evidence when rebutting plaintiff's "probability or certainty" evidence.

would then shift and defendant would then bear the burden of positively proving that another specific cause, not the negligence established by plaintiff's expert, caused the injury. Certainly, this is much more than what should be required of a defendant in rebutting a plaintiff's evidence.

Were we to accept plaintiff's argument that once a plaintiff puts on a prima facie case, a defendant cannot rebut it without proving another cause, the resulting inequities would abound. For example if ninety-nine out of one hundred medical experts agreed that there were four equally possible causes of a certain injury, A, B, C and D, and plaintiff produces the one expert who conclusively states that A was the certain cause of his injury, defendant would be precluded from presenting the testimony of any of the other ninety-nine experts, unless they would testify conclusively that B, C, or D was the cause of injury. Even if all of defendant's experts were prepared to testify that any of the possible causes A, B, C or D, could have equally caused plaintiff's injury, so long as none would be prepared to state that one particular cause, other than that professed by plaintiff more probably than not caused plaintiff's injury, then defendant's experts would not be able to testify at all as to causation. We think that such a result does not reflect the state of the law in New Hampshire, and furthermore would be manifestly unjust and unduly burdensome on defendants.

Under the circumstances of this case, Dr. Eberhart was prejudiced by the granting of the Second Motion in Limine, and this prejudice constituted reversible error. Thus, the judgment in favor of plaintiff is vacated and remanded for a new trial.

Vacated and remanded.