NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TODD CLEMENS, *Plaintiff/Appellant*,

*v.*

DMB SPORTS CLUBS LIMITED PARTNERSHIP, dba Camelback Village
Racquet and Health Club; DMB MANAGEMENT COMPANY; JAMES
KOOP, D.C., *Defendants/Appellees*.

No. 1 CA-CV 14-0645
FILED 12-8-2015

Appeal from the Superior Court in Maricopa County
No. CV2012-012780
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

The Law Offices of David W. Dow, Phoenix
By David W. Dow
*Counsel for Plaintiff/Appellant*

Grasso Law Firm, P.C., Chandler
By Robert Grasso, Jr., Kim S. Alvarado
*Counsel for Defendants/Appellees* DMB Sports Clubs Limited Partnership &
DMB Management Company

Renaud Cook Drury Mesaros, P.A., Phoenix
By Carol M. Romano, Kelli K. Williams
*Counsel for Defendant/Appellee* James Koop, D.C.

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1            Todd A. Clemens ("Clemens") appeals the superior court's judgment in favor of James Koop, D.C. ("Dr. Koop") and DMB Sports Clubs Limited Partnership and DMB Management Company (collectively, "DMB").  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2            On September 2, 2010, Clemens was working out at DMB's gym using the seated abdominal machine when the weight-bearing mechanism caught, forcing Clemens back into the head-and-neck pad. Clemens left the weight room and sat down outside the program director's office, where a trainer passing by asked how he was doing.  Clemens told the trainer what happened, and the trainer suggested he get an ice treatment at the spa.  Clemens went to the spa area and asked for an ice treatment.  In response, the receptionist asked Clemens if he would like to see the chiropractor.  Clemens chose to see the chiropractor, Dr. Koop, who provided chiropractic treatment and sent Clemens home to rest.

¶3            Four days later, Clemens went to an urgent care center, which directed him to a hospital emergency department.  At the hospital, Clemens complained of neck pain and a headache.  Hospital testing showed Clemens had a brain hemorrhage.

¶4            Clemens filed suit against Dr. Koop and DMB, alleging DMB failed to supervise his use of DMB's abdominal machine and that, while using the machine, he suffered a traumatic brain injury, which Dr. Koop and DMB failed to recognize and Dr. Koop exacerbated by failing to refer him for appropriate medical treatment.  Clemens brought personal injury and medical negligence claims against Dr. Koop, and personal injury, breach of contract, and negligent hiring, retention, or supervision claims against DMB.

¶5          Clemens disclosed twenty-three expert witnesses in support of his claims—none of them causation experts. Clemens did not disclose a causation expert by the expert disclosure deadline.

¶6          At deposition, Clemens' standard of care expert, Mark F. Sutton, D.C. ("Dr. Sutton") confirmed he was only asked to render opinions about standard of care. However, Dr. Sutton testified that Dr. Koop's failure to meet the standard of care "likely resulted in physical harm," which Dr. Sutton described as "the subsequent injuries that Mr. Clemens apparently suffered as a result of the head trauma." Dr. Sutton then admitted both that Clemens' attorney told him Clemens hit his head causing a brain hemorrhage and that he had not reviewed any medical records except for those generated by Dr. Koop. Dr. Sutton ultimately testified he did not know what happened to Clemens and could not give an opinion whether "physical harm was caused" to Clemens.

¶7          Shortly before trial, both Dr. Koop and DMB moved for summary judgment. At oral argument on the motions, because the parties had differing views regarding the extent to which Dr. Sutton's testimony established causation, the court asked pointed causation questions:

> THE COURT: All right. Now, as I understand, no healthcare provider, either someone who treated Mr. Clemens or Dr. Sutton or otherwise, has opined that the hemorrhage resulted from the head trauma at the club or developed due to a failure to refer Clemens for head trauma evaluation.
>
> [DR. KOOP'S COUNSEL]: That's correct.
>
> [CLEMENS' COUNSEL]: That's essentially true, Your Honor.
>
> THE COURT: All right. And no healthcare provider has linked any of his headaches or cognitive deficits -- deficits or damage to -- to this hemorrhage.
>
> [DR. KOOP'S COUNSEL]: Correct.
>
> [CLEMENS' COUNSEL]: Correct, Your Honor. I mean, he -- he's just sort of globally damaged, and we've never tried to major focus on it.

¶8          After considering the evidence and argument presented, the superior court found as follows:

There is no medical testimony that links the Club incident to the hemorrhage or to any damage of Clemens. Ironically, while Plaintiff argues that the sequence of events alone presents a "*res ipsa*" situation, no healthcare opinion has been tendered to support the theory that the hemorrhage was caused by the incident or that delay increased the risk of harm.

**¶9**　　　The superior court granted Dr. Koop's motion for summary judgment, dismissed all claims against DMB,[1] denied DMB's motion for summary judgment as moot, and entered judgment for both Dr. Koop and DMB. Clemens timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (Supp. 2015).

## ANALYSIS

**¶10**　　　Clemens argues the superior court erred in finding no evidence of causation and in granting summary judgment in favor of Dr. Koop.[2] We review *de novo* whether the superior court properly entered summary judgment. *Awsienko v. Cohen*, 227 Ariz. 256, 258, ¶ 7, 257 P.3d 175,

---

[1]　　　It is unclear why the superior court chose to summarily dismiss the claims against DMB rather than consider the merits of DMB's summary judgment motion. However, we "must determine whether the judgment, not the reasoning, of the superior court was correct." *Picaso v. Tucson Unified Sch. Dist.*, 217 Ariz. 178, 181, ¶ 9, 171 P.3d 1219, 1222 (2007) (citation omitted).

[2]　　　Although Clemens also appeals the judgment in favor of DMB, and argues "[t]he dismissal of the other defendants based on the dismissal of Appellee Koop should also be reversed," Clemens does not develop this argument in his opening brief. In his reply brief, Clemens states his own testimony regarding DMB's apparent knowledge of "a possible head injury due to the incident on the machine," and subsequently "[s]ending" Clemens to see Dr. Koop, makes DMB responsible for his injuries. Clemens then also requests that we "strike" from DMB's brief the arguments concerning the sufficiency of the evidence as to all claims against DMB. Clemens has not made clear what he is arguing on appeal as to DMB; consequently, he has waived any argument concerning the dismissal of all claims against DMB. *See* ARCAP 13(a)(7); *Carrillo v. State*, 169 Ariz. 126, 132, 817 P.2d 493, 499 (App. 1991) ("Issues not clearly raised and argued on appeal are waived." (citation omitted)). Thus, we only address the propriety of the summary judgment award in Dr. Koop's favor.

177 (App. 2011). In our review, we view the evidence in the light most favorable to Clemens, against whom the superior court entered judgment. *See id.* Summary judgment is proper when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

**¶11** A plaintiff in a negligence action must prove causation. *Purcell v. Zimbelman*, 18 Ariz. App. 75, 82, 500 P.2d 335, 342 (1972). Causation is a question for the jury "unless reasonable persons could not conclude that a plaintiff had proved this element." *Barrett v. Harris*, 207 Ariz. 374, 378, ¶ 12, 86 P.3d 954, 958 (App. 2004). A plaintiff may prove proximate causation by presenting facts from which a causal relationship may be inferred, but the plaintiff cannot leave causation to the jury's speculation. *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990). Where a plaintiff has insufficient evidence of causation, summary judgment is appropriate. *See id.*

**¶12** In the ordinary negligence case, a plaintiff must prove causation by a probability standard. *Benkendorf v. Advanced Cardiac Specialists Chartered*, 228 Ariz. 528, 530, ¶ 8, 269 P.3d 704, 706 (App. 2012). In a limited class of cases relying on the "loss of chance" theory of causation, a plaintiff only needs to show that negligence "increased the risk" of harm in order for the jury to decide probable causation. *Thompson v. Sun City Cmty. Hosp., Inc.*, 141 Ariz. 597, 605-08, 688 P.2d 605, 613-16 (1984).

**¶13** Clemens argues Dr. Koop's testimony that "the faster [a person suffering a traumatic brain injury] receive[s] treatment, the better the outcomes" and Dr. Sutton's testimony that Dr. Koop deviated from the standard of care together provide sufficient evidence that the delay in referring Clemens for appropriate medical treatment exacerbated Clemens' injury—thus bringing Clemens' claims within the ambit of the "loss of chance" class of cases.

**¶14** Under the "loss of chance" doctrine, the relaxed showing necessary to get the issue of causation before the jury applies only to "the limited class of cases in which defendant undertook to protect plaintiff from a particular harm and negligently interrupted the chain of events, thus increasing the risk of that harm." *Thompson*, 141 Ariz. at 608, 688 P.2d at 616. Clemens, however, does not argue that Dr. Koop negligently interrupted a chain of events, which increased the risk of harm and deprived Clemens of a "loss of chance" at a better outcome. Thus, in this ordinary negligence case, Clemens must offer sufficient evidence of probable causation to defeat summary judgment. *See Robertson*, 163 Ariz.

at 546, 789 P.2d at 1047.  This he did not do.  Dr. Sutton conceded he did not know what happened to Clemens.  And Dr. Koop's testimony that "the faster [a person suffering a traumatic brain injury] receive[s] treatment, the better the outcomes," was in response to a general question about treatment for traumatic brain injuries and did not specifically link Clemens' alleged injuries with any act or omission by Dr. Koop.  As such, Dr. Koop's testimony does not provide the requisite causal link.

¶15        Clemens argues "a lay person could easily determine that the failure to obtain medical care for a brain hemorrhage would cause an increased risk and increased injury."  He further argues his own testimony that he told the DMB trainer he didn't "feel very well" and explained "what had happened in the weight room" is "sufficient evidence to show that the injury to [his] head could be tied to the injury at DMB Sports Club while using the exercise equipment."  We reject these arguments.

¶16        Where a plaintiff alleges physical injury damages, such as here, the plaintiff must prove the cause of those physical injury damages through expert medical testimony, "unless a causal relationship is readily apparent to the trier of fact." *Gregg v. Nat'l Med. Health Care Servs., Inc.*, 145 Ariz. 51, 54, 699 P.2d 925, 928 (App. 1985) (citation omitted); *see also Kreisman v. Thomas*, 12 Ariz. App. 215, 218, 469 P.2d 107, 110 (1970) (stating that the parties agreed expert medical testimony was necessary to prove whether a customer's severe ear infection was caused by a hearing aid dealer's alleged negligence in not properly adjusting the customer's hearing aids).

¶17        Although we agree a lay person can easily understand that a delay in treatment for a brain hemorrhage could cause increased risk for injury, it is not readily apparent to a lay person that any act or omission by Dr. Koop caused Clemens' alleged injuries.  Expert medical testimony is required to prove this causal connection.  *See Gregg*, 145 Ariz. at 54, 699 P.2d at 928.  In the absence of such evidence from the record, Clemens' claims fail as a matter of law.  Thus, we affirm summary judgment in favor of Dr. Koop and the judgment in favor of DMB.

**CONCLUSION**

**¶18**     For the foregoing reasons, we affirm.  In our discretion, we deny DMB's request for attorneys' fees pursuant to A.R.S. § 12-341.01(A) (Supp. 2015); however, we award DMB and Dr. Koop their taxable costs upon compliance with Rule 21, ARCAP.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama