NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JASON POLYARD, *Plaintiff/Appellant/Cross-Appellee,*

*v.*

MUHIB ALATTAR, *Defendant/Appellee/Cross-Appellant,*

SCOTTSDALE HEALTHCARE HOSPITALS, an Arizona Corporation,
d.b.a. SCOTTSDALE OSBORN MEDICAL CENTER, *Defendant/Appellee.*

No. 1 CA-CV 22-0413
FILED 3-28-2023

Appeal from the Superior Court in Maricopa County
No. CV2017-094745
The Honorable Peter A. Thompson, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Branham Law Office, Mesa
By Marlon E. Branham
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Broening Oberg Woods & Wilson PC, Phoenix
By James R. Broening, Megan E. Gailey, Kelley M. Jancaitis
*Counsel for Defendant/Appellee/Cross-Appellant*

Quintairos, Prieto, Wood & Boyer PA, Scottsdale
By Rita J. Bustos, Michael Tamm
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Judge Anni Hill Foster joined.

---

**T H U M M A**, Judge:

¶1   Plaintiff Jason Polyard appeals from the grant of summary judgment against him on his medical negligence claims and the denial of his motion for new trial, treated as a motion for reconsideration. Defendant Dr. Muhib Alattar cross-appeals from the denial of his request for taxable costs. For the reasons below, the grant of summary judgment is affirmed, the denial of taxable costs is vacated, and this case is remanded for an award of taxable costs.

## FACTS AND PROCEDURAL HISTORY

¶2   On July 31, 2015, Polyard had a seizure, fell, hit his head and was taken by ambulance to defendant Scottsdale Osborn Medical Center (the Hospital). Among other things, Polyard complained of left wrist and shoulder pain. Polyard spent several days in the Hospital being treated.

¶3   On August 2, 2015, given swelling and bruising, Polyard had x-rays taken of his left forearm, which showed no fracture, dislocation or abnormality. On August 3, 2015, Alattar examined Polyard and noted mild to moderate swelling of his left hand. Medical records show that Polyard's left arm ached on August 3 and 4, 2015, and had pressure on August 4, 2015. Polyard was discharged from the Hospital at around 1:30 p.m. on August 4, 2015. Polyard returned to the Hospital emergency room at about 7:30 p.m. that night complaining of left arm pain and swelling, which he said had become much worse after his discharge. An orthopedic surgeon noted compartment syndrome (an increase in pressure in a muscle causing pain) and an MRI revealed extensive edema (swelling caused by fluid). Later that evening, the orthopedic surgeon performed emergency surgery, called a fasiotomy, to relieve swelling and pressure in his left arm.

**¶4**        Polyard filed this suit in July 2017, alleging medical negligence by Alattar based on a delayed diagnosis of compartment syndrome and resulting permanent injury. Polyard also sued the Hospital, claiming vicarious liability.[1]

**¶5**        Polyard retained expert Dr. Stella Fitzgibbons, who opined that Alattar fell below the standard of care in treating Polyard by failing to order imaging or consult orthopedics to determine why Polyard's hand was swollen. Fitzgibbons testified she thought the compartment syndrome was starting to develop before Polyard was discharged from the Hospital. She testified, however, that compartment syndrome can take anywhere from two to three to 24 hours to "set in." Fitzgibbons could not say when Polyard developed compartment syndrome, but opined that it was sometime between noon and 7:00 p.m. on August 4, 2015. She could not say whether Polyard had signs and symptoms of compartment syndrome at the time of his discharge. Fitzgibbons could not say to a reasonable degree of medical probability that, had more imaging been performed at about noon on August 4, 2015, it would have changed Polyard's outcome.

**¶6**        Polyard also retained orthopedic surgeon Dr. Michael Steingart as a causation expert. At his deposition, Steinhart opined that he believed the diagnosis of compartment syndrome was delayed, but could not say that Polyard would have been taken to surgery sooner if the compartment syndrome had been diagnosed earlier. He added, however, that if Polyard's medical providers had "noticed it sooner, they may have been able to prevent any surgery."

**¶7**        After the close of discovery, Alattar moved for summary judgment, arguing Polyard failed to establish that a deviation from the standard of care caused injury. The Hospital also moved for summary judgment. The court granted the motions and denied Polyard's motion for reconsideration. The court, however, awarded no taxable costs to Alattar. Polyard timely appealed the resulting judgment, and Alattar timely cross-appealed the denial of taxable costs. This court has appellate jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(1) (2023).[2]

---

[1] The superior court determined that Polyard was not making any direct claim against the Hospital, a ruling not challenged on appeal.

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

## DISCUSSION

### I.     The Court Properly Entered Summary Judgment for Defendants.

¶8          To prove his medical malpractice claim, Polyard had to establish through expert testimony that Alattar breached the applicable standard of care and his breach caused Polyard's injury. *See* A.R.S. § 12–563; *Barrett v. Samaritan Health Servs., Inc.*, 153 Ariz. 138, 141 (App. 1987); *Gregg v. Nat'l Med. Health Care Servs., Inc.*, 145 Ariz. 51, 54 (App. 1985).

### A.     Standard of Care.

¶9          Polyard argues that Alattar deviated from the standard of care. Alattar counters that Fitzgibbons failed to testify to a reasonable degree of medical probability that Alattar deviated from the standard of care. Reasonable degree of medical probability or certainty is the standard for causation, not standard of care. *See Benkendorf v. Advanced Cardiac Specialists Chartered*, 228 Ariz. 528, 530, ¶ 8 (App. 2012). The record shows Fitzgibbons testified that Alattar fell below the standard of care by failing to order imaging or consult orthopedics to explain why Polyard's left hand was swollen. This is enough to create a genuine issue of material fact on the standard of care issue.

### B.     Waiver.

¶10          The superior court granted summary judgment to Alattar, concluding Polyard failed to offer expert evidence that Alattar breached the standard of care or caused the injury to Polyard. In his opening brief on appeal, Polyard challenges the standard of care ruling, but not the causation ruling. A plaintiff in a medical malpractice case must show both a breach of the standard of care *and* causation, A.R.S. § 12-563, and Alattar argues that Polyard waived any argument on causation. An opening brief on appeal must affirmatively present, with citation to legal authorities and the record, each issue an appellant wishes to raise. *See* ARCAP 13(a)(6) & (7). A failure to do so can lead to waiver. *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009). By failing to raise or develop any causation argument, Polyard has waived that argument. Even apart from waiver, however, Polyard has shown no error in the grant of summary judgment on causation.

### C.     Causation.

¶11          A medical negligence claim requires the plaintiff to prove a "causal connection between an act or omission and the ultimate injury through expert medical testimony, unless the connection is readily

apparent to the trier of fact. To establish the requisite causal connection, the plaintiff's expert is generally required to testify as to probable causes of the plaintiff's injury." *Benkendorf*, 228 Ariz. at 530 ¶ 8 (quoting *Barrett v. Harris*, 207 Ariz. 374, 378 ¶ 12 (App. 2004) and citing cases). Causation is a question of fact for the jury "unless reasonable persons could not conclude that a plaintiff had proved this element." *Barrett*, 207 Ariz. at 378 ¶ 12.

¶12 When faced with defendants' motion for summary judgment, Polyard cited an affidavit by Fitzgibbons stating Alattar's breach "significantly contributed to the compartment syndrome" Polyard sustained. At her deposition, however, Fitzgibbons admitted that her opinions were limited to standard of care. Although testifying that she thought the compartment syndrome was starting to develop before Polyard was discharged from the Hospital, she estimated that it developed sometime between noon and 7:00 p.m. on August 4, 2015. Fitzgibbons could not say whether Polyard had signs and symptoms of compartment syndrome before being discharged. She also could not say that to a reasonable degree of medical probability that, had more imaging been performed at about noon on August 4, 2015, it would have changed the outcome. Fitzgibbons also testified that compartment syndrome can take as long as 24 hours "to set in." Accordingly, a jury would have to speculate whether earlier imaging or an orthopedic consultation would have forestalled the development of compartment syndrome, avoiding the need for surgery. For these reasons, Fitzgibbons' testimony is insufficient evidence of causation to reach a jury.

¶13 In his reply brief on appeal, Polyard argues there is a genuine issue of material fact on causation given the showing that Alattar's breach increased the risk of his injury, citing *Thompson v. Sun City Cmty. Hosp., Inc.*, 141 Ariz. 597 (1984). *Thompson* addressed a "loss of chance" theory of causation, in which a plaintiff only needs to show that negligence "increased the risk" of harm, instead of providing evidence of causation. 141 Ariz. at 605–08. But this "loss of chance" theory applies only to "the limited class of cases in which defendant undertook to protect plaintiff from a particular harm and negligently interrupted the chain of events, thus increasing the risk of that harm." *Id.* at 608. Polyard has not pressed such a theory here. Thus, Polyard had to offer sufficient evidence of causation to defeat summary judgment, which he failed to do. *See Benkendorf*, 228 Ariz. at 530 ¶ 8.

¶14 In his reply brief on appeal, Polyard also refers to Steingart's report, which states that "in all probability, there was a delay in diagnosis of compartment syndrome leading to a devastating outcome." Because

Polyard first relied on this report in his reply in support of his motion to reconsider, he waived this argument. *See, e.g.*, *Nickerson v. Green Valley Recreation, Inc.*, 228 Ariz. 309, 315 ¶ 9 (App. 2011); *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240–41 ¶¶ 15–16 (App. 2006). Apart from waiver, this statement does not satisfy Polyard's burden to show that earlier imaging or an orthopedic consult probably would have forestalled the development of compartment syndrome or the necessity for surgical intervention. At his deposition, Steingart could not testify that if compartment syndrome had been diagnosed sooner, Polyard would have been taken to surgery sooner or that surgery could have been avoided; he only testified that if Polyard's healthcare providers had "noticed it sooner, they *may* have been able to prevent any surgery." This testimony does not meet the probability standard to prove causation. *See Benkendorf*, 228 Ariz. at 530 ¶ 8.

¶15 Because Polyard failed to provide sufficient causation evidence, his claim fails as a matter of law. *See Barrett*, 207 Ariz. at 378, ¶ 12. Accordingly, the superior court properly granted summary judgment against him and did not abuse its discretion in denying his motion for reconsideration. *See Tilley v. Delci*, 220 Ariz. 233, 238 ¶ 16 (App. 2009). And because summary judgment for Alattar was proper, the superior court also properly granted summary judgment for the Hospital on vicarious liability. *Law v. Verde Valley Med. Ctr.*, 217 Ariz. 92, 95-96 ¶ 12-13 (App. 2007)

## II. Cross Appeal.

¶16 Alattar argues the superior court erred in denying his request for taxable costs. Polyard responds that Alattar did not timely file his verified statement of costs. By statute, "[t]he successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law." A.R.S. § 12-341. The award of costs to the successful party in a civil action is mandatory, not discretionary. *See, e.g.*, *Tucson Ests. Prop. Owners Ass'n, Inc. v. McGovern*, 239 Ariz. 52, 57 ¶ 17 (App. 2016); *Trollope v. Koerner*, 21 Ariz. App. 43, 47 (1973). "[A]ny request for costs must be filed within 20 days after the decision is filed, or by any such other date as the court may order." Ariz. R. Civ. P. 54(f)(2)(A).

¶17 The superior court's minute entry granting summary judgment for defendants directed defendants to lodge a form of final judgment within 20 days. Alattar did so, and at the same time, filed a verified statement of taxable costs. That request for costs was timely. *See id.* The court, however, awarded Alattar no taxable costs, which was error.

**CONCLUSION**

**¶18** The judgment for Alattar and the Hospital and against Polyard is affirmed, other than the denial of taxable costs, which is vacated. This matter is remanded to the superior court to address taxable costs incurred in that court. Polyard's request for an award of attorneys' fees is denied. Defendants are awarded their taxable costs incurred on appeal contingent upon their compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA