Filed 5/26/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GARY KLINE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ZIMMER, INC.,<br><br>    Defendant and Appellant. | B302544<br><br>(Los Angeles County<br>Super. Ct. No. BC444834) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Daniel J. Buckley, Judge.  Reversed and remanded.

Faegre Drinker Biddle & Reath, Tarifa B. Laddon, Amanda Semaan, Bruce Jones and Joseph M. Price for Defendant and Appellant.

Waters Kraus & Paul, Gary M. Paul and Michael B. Gurien for Plaintiff and Respondent.

_____

This is an appeal of a judgment entered after a limited retrial of plaintiff and respondent Gary Kline's personal injury claims against defendant and appellant Zimmer, Inc. (Zimmer), a medical device manufacturer. Zimmer asserts that the trial court made two categories of evidentiary error and that the jury awarded Kline excessive damages. We agree with Zimmer that the court erred in categorically excluding all of Zimmer's proffered medical opinions expressed to less than a reasonable medical probability as to issues on which Kline bore the burden of proof. Because that error prevented Zimmer from presenting any expert testimony as to an issue where expert testimony was essential, we reverse for a retrial. As Zimmer's other points of error are not necessary to our disposition of this appeal, we decline to address them.

## BACKGROUND

Due to painful osteoarthritis in his right hip, Kline underwent a total hip replacement surgery in 2007, during which he was implanted with an artificial joint called the Durom Acetabular Component (Durom Cup). Zimmer was the manufacturer of the Durom Cup. The initial surgery failed and Kline underwent a second surgery—known as a "revision surgery"—in September 2008 to replace the Durom Cup with a different device. Kline continued to experience severe pain after his revision surgery. He underwent various treatments and physical therapy, and, by March of 2009, he was "back to normal" and "feeling pretty good." With this progress, Kline was released from the care of his physical therapist and his orthopedic surgeon.

2

However, the pain returned and Kline began seeing a rheumatologist, Dr. Chabra, in September of 2010. Kline continued to see Dr. Chabra for approximately eight years. Dr. Chabra noted at his initial visit that Kline was complaining of hip pain and stiffness in both hips, with stiffness primarily in his surgically repaired hip. Kline also complained of lower back pain. Dr. Chabra performed a series of tests and studies and did not reach a conclusion as to the cause of his pain. Dr. Chabra did prescribe Kline a steroid, together with other drugs, to see if it would alleviate his symptoms. The steroid did so but, in consultation with Dr. Chabra, Kline discontinued its use over concerns of negative side effects. Kline's condition then deteriorated significantly. Thereafter, he repeatedly went back on, and then back off, the steroid with corresponding improvements and set-backs in his pain levels. Dr. Chabra also prescribed Kline narcotic pain medication and physical therapy, but the pain and limitations on mobility persisted, particularly in the right hip area.

At some point Kline made the decision to sue Zimmer. The thrust of his claim was that the Durom cup was defective; were it not defective his first surgery likely would have substantially resolved his hip issues; because it was defective he suffered ongoing pain and impairments and required a second surgery; and the second surgery left him with permanent pain and impairments. In 2015, a jury found the Durom Cup was, in fact, defective and awarded Kline $153,317 in economic damages and $9 million in non-economic damages. But the first trial court granted a new trial based on its view of the damages being excessive and misconduct on the part of Kline's counsel. On an appeal and cross-appeal raising a multitude of issues, we

affirmed that grant in part and "remanded to the trial court for a retrial on Kline's damages caused by the design defect of the Durom Cup." (*Kline v. Zimmer, Inc.* (Apr. 27, 2018, B269317) [nonpub. opn] (*Zimmer I*).).[1]

The second trial proceeded in 2019 and Kline was still experiencing pain and weakness, with attendant limitations on his daily life and activities. The jury in the second trial heard testimony from, among others, Kline, Dr. Chabra, Kline's orthopedic surgeon, Kline's current treating physician, and an expert hired by Kline to testify to the cause of his pain and other limitations. Kline's expert testified to a reasonable medical probability that his pain and weakness were a result of a defect in the Durom Cup that caused pain, inflammation, and changes to his hip joint which necessitated a second surgery, and that the second surgery resulted in changes to Kline's muscles and soft tissues causing him chronic pain. Prior to the first surgery, he opined, Kline had a "good high percentage potential of

---

[1] Zimmer has moved to augment the record with this unpublished opinion and the parties' related briefing pursuant to California Rules of Court, rule 8.155(a)(1). California Rules of Court, rule 8.155(a)(1), applies only to "superior court" documents; not documents filed in a prior appeal. We therefore treat Zimmer's motion as a request for judicial notice and grant it only with respect to our unpublished opinion pursuant to Evidence Code 452, subdivision (d). (See, e.g., *Estate of Dito* (2011) 198 Cal.App.4th 791, 795, fn. 3 [taking judicial notice, on its own motion, of unpublished opinion in prior appeal in same matter].) We are unpersuaded of the necessity of reviewing briefs filed in the prior appeal in this instance for "background and history," which the parties ably provided in their briefs in this appeal. We therefore deny Zimmer's motion as to those documents.

4

treatment," but because that surgery was rendered unsuccessful by the defective Durom Cup, Kline no longer has "a good high percentage treatment available."

The jury did not hear from an expert for Zimmer. Although Zimmer offered an expert, Dr. Sah, who was prepared to testify about "possible" alternative causes of Kline's pain, the trial court excluded any and all medical opinions that were expressed to less than a reasonable medical probability. Because Dr. Sah was unable to offer an opinion to a reasonable medical *probability*, Zimmer had no expert testimony. The court also excluded certain testimony from Kline's treating physicians relating to potential alternative causes of his pain on the same basis.

The second trial resulted in a slightly smaller jury verdict against Zimmer: $80,460.19 in economic damages and $7.6 million in noneconomic damages. Zimmer moved for another retrial based on (1) the exclusion of testimony on the grounds it was offered to less than a reasonable medical probability, (2) the exclusion of certain photographs and a video showing Kline engaged in hunting and shooting activities; and (3) excessive damages. The trial court denied Zimmer's motion. Zimmer now appeals the judgment and denial of its motion for retrial on the same grounds for which it sought retrial. We reverse the judgment and remand for retrial because we agree with Zimmer on its first point of error.

## DISCUSSION

Zimmer contends that the trial court erred by excluding expert medical opinions Zimmer proffered because such opinions were not stated to a reasonable medical probability. The court's basis for exclusion was purely legal: it interpreted California law as barring any expert opinion stated to less than a reasonable

5

probability, rendering one identifying a mere "possible cause . . . not a proper opinion . . . ."

Although we ordinarily review rulings excluding expert testimony for abuse of discretion, our review is de novo when such rulings are based on a conclusion of law. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).)

### 1. Purpose for Which the Opinions Were Offered

Under California law, causation "in a personal injury action . . . must be proven within a reasonable medical probability based upon competent expert testimony." (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402 (*Ortho Pharmaceutical*).) The reasonable medical probability standard mirrors the more-likely-than-not standard of proof in general negligence actions. (*Id.* at p. 403.) Kline and Zimmer agree that expert causation testimony expressed short of a reasonable medical probability is inadmissible when offered by the party with the burden of proof. Zimmer contends, however, that the same rule does not apply to a party without the burden of proof, specifically when a defendant's expert testimony is offered only to challenge the plaintiff's expert's causation opinions. This contention prompted a disagreement between the parties concerning the purpose for which Zimmer offered the excluded expert causation opinions.

According to Kline, Zimmer "was attempting to *establish* alternative causes of Mr. Kline's injuries . . . for the purpose of reducing the noneconomic damages for which it was liable in the damages-only trial." (Italics added.) As to Dr. Sah specifically, Kline claims the purpose of Dr. Sah's proposed testimony was "to identify and *prove* actual alternative causes [of Kline's

6

injury] . . . ." (Italics added.) Zimmer, on the other hand, argues it "offered the testimony of its expert Dr. Sah and [Kline's] treating doctors to *challenge* whether Kline had met his burden of proof on [the causation] issue." (Italics added.) The record supports Zimmer's position.

Starting with Dr. Sah, Zimmer explained in its opposition to Kline's motion to exclude Dr. Sah's testimony that the purpose of such testimony was to "challeng[e] [Kline's] expert's opinion regarding causation . . . ." Zimmer's offer of proof made in support of that opposition, and which incorporated that opposition by reference, was that Dr. Sah would offer "alternative causes [as] possible explanations for [Kline's] pain," i.e., explanations different than those offered by Kline's expert. When pressed by the trial court on use of the term "possible," Zimmer confirmed it was intentional: "Yes, your Honor. Possible alternative causes that do not rise to the greater than 50 percent chance of causing [Kline's] hip pain." By acknowledging that its evidence would not meet the standard for proving causation, Zimmer made clear that it was not seeking to *prove* an alternative cause; rather, it sought only to show Kline had failed to carry its burden on causation. Zimmer drove this point home later in the same colloquy: "[The] reasonable degree of medical probability is plaintiff's burden . . . . [T]o have a defendant state affirmatively that one cause rises to the level of reasonable degree of medical probability is improper burden shifting upon the defendant." From Zimmer's opposition papers, its offer of proof, and related colloquy, Zimmer adequately articulated the purpose for which it intended to offer Dr. Sah's testimony. (Evid. Code, § 354, subd. (a) [purpose may be established by offer of proof or "any other means"].)

7

The same is true of Zimmer's proposed use of excluded testimony from Kline's treating physicians. For example, Zimmer sought to introduce testimony from Kline's treating physicians that would demonstrate uncertainty as to the cause of Kline's pain by acknowledging the possibility of other causes. Zimmer argued their testimony was admissible to cast doubt on the conclusion of Kline's expert: "It's the burden of proof. If the [treating] doctors all say [']we can't say one way or the other,['] the plaintiffs have not met their burden of proof." While this of course overstates the legal effect of the proffered evidence, it nevertheless makes clear how Zimmer proposed to use it and what it hoped to accomplish in doing so.

### 2. The Trial Court Erred in Excluding Opinions Offered to Challenge Kline's Expert's Conclusions on the Basis That They Were Not Stated to a Reasonable Medical Certainty

Having established that Zimmer sought to introduce causation opinions and other evidence to challenge the causation opinion of Kline's expert, rather than to prove an actual alternative cause, we next consider whether the trial court erred in excluding Zimmer's evidence for this purpose. We find that it did.

The plaintiff in a personal injury action bears the burden to prove that the defendant's negligence was the legal cause of his injury. (*Espinosa v. Little Co. of Mary Hospital* (1995) 31 Cal.App.4th 1304, 1314 (*Espinosa*); see also Evid. Code, § 500.) This means that he must ultimately persuade[2] the factfinder that

---

[2] The terms burden of proof and burden of persuasion are synonymous in California. (*Sargent Fletcher, Inc. v. Able Corp.* (2003) 110 Cal.App.4th 1658, 1667 (*Sargent*).) We use the term

8

the defendant's negligence was more likely than not a substantial factor in causing him damages. (*Espinosa, supra,* 31 Cal.App.4th at pp. 1321–1322.)

But before the plaintiff is even entitled to submit his claim to a factfinder, he must make a prima facie case, meaning he must proffer evidence sufficient to *permit* a finding in his favor. (*Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1385 (*Cottle*); Evid. Code, § 550, subd. (b).) Where causation is "beyond the experience of laymen," as it is in complex medical injury cases, such evidence must be in the form of an expert opinion that *could be* accepted by the factfinder as satisfying the plaintiff's burden of proof. (See *Ortho Pharmaceutical, supra,* 163 Cal.App.3d at pp. 402–403.) That opinion must be expressed "to a reasonable medical probability," which, again, means more likely than not (*ibid.*), because more likely than not is the threshold level of certainty necessary to prove a personal injury claim.

Thus, testimony by a plaintiff's expert who cannot opine to a reasonable medical probability is properly excluded because the opinion could not sustain a finding in the plaintiff's favor. (*Cottle, supra,* 3 Cal.App.4th at p. 1385 [absent evidence to show causation to a reasonable medical probability there is no factual question for a jury to resolve].) The reason for this is clear. To allow a jury to consider a claim where the plaintiff's prima facie showing falls short of reasonable medical probability would be to allow the jury to find the requisite degree of certainty where science cannot: " 'If the experts cannot predict probability in these situations, it is difficult to see how courts can expect a jury

persuasion here to make clear that proof refers to persuasion and not merely production. Other references to "persuasion" herein mean "proof" and vice versa.

9

of laymen to be able to do so.' " (*Ortho Pharmaceutical*, *supra*, 163 Cal.App.3d at p. 403 [quoting *Parker v. Employers Mut. Liability Ins. Co.* (Tex. 1969) 440 S.W.2d 43, 49].)

The same does not apply to a defendant's efforts to challenge or undermine the plaintiff's prima facie case. Even after the plaintiff has made its prima facie case, the general rule is that the burden to prove causation remains with the plaintiff. (See *Sargent*, *supra*, 110 Cal.App.4th at p. 1668.) And, regardless of whether the defendant produces any evidence at all, it remains for the factfinder to say whether the plaintiff has in fact met its burden to the requisite degree of certainty. (*Ibid.*; see also *Cottle*, *supra*, 3 Cal.App.4th at p. 1385.)

These general rules apply here. Kline acknowledges that he bore the burden of proving that Zimmer caused his injuries to a reasonable medical probability. Zimmer was entitled to put on a case that Kline failed to satisfy that burden. To accomplish this, Zimmer did not need to show it was more likely than not that a cause identified by Zimmer resulted in Kline's injuries. In other words, Zimmer did not need to show that a *different* cause was more likely than not the cause of Kline's injuries.[3]

_____

[3]     This is true only because Zimmer was not attempting to affirmatively prove that there was, in fact, a different cause of Kline's pain, such as for the purpose of allocating damages to a third party. Kline cites authorities where the defendant, having undertaken such an effort, was required to show causation to a reasonable medical probability. (See *Sparks v. Owens-Illinois, Inc.* (1995) 32 Cal.App.4th 461, 478 [defendant seeking to allocate liability to third parties bears burden to show such third parties are legal causes and percentage of fault]; *Stewart v. Union Carbide Corp.* (2010) 190 Cal.App.4th 23, 33 [same], disapproved on another ground in *Webb v. Special Electric Co., Inc.* (2016) 63

All that Zimmer needed to show was that Kline's evidence was insufficient to prove Kline's injuries were more likely than not caused by Zimmer.  It should have been permitted to do so by offering expert opinions offered to less than a reasonable medical probability that Kline's injuries may have been attributable to other causes.  (Cf. *Cahill Bros., Inc. v. Clementina Co.* (1962) 208 Cal.App.2d 367, 385 [defendant without burden of proof needed only to "produce evidence sufficient to offset the effect of . . . plaintiff's showing; it was not required to offset it by a preponderance of the evidence"].)  Such defense expert opinions could cast doubt on the accuracy and reliability of a plaintiff's expert.  The jury is entitled to consider such evidence in deciding whether the plaintiff's expert is exaggerating his or her opinion.[4]

In so holding, we join state and federal courts from across the country that recognize the reasonable medical probability requirement applies only to the party bearing the burden of proof

_____

Cal.4th 167, 188.)  We have no disagreement with these authorities as far as they go.  (See also *Espinosa, supra,* 31 Cal.App.4th at p. 1321 ["A plaintiff does not have the burden of apportioning damages"].)  However, they do not concern the scenario presented here: a defendant with no burden to prove any matter seeking to introduce evidence for the purposes of demonstrating only that the plaintiff failed to meet *its* burden.

[4]      For example, if the plaintiff's expert opines there is a 99 percent certainty that defendant caused an injury, and the defense expert opines that he cannot say with certainty who caused the injury, but there is a 49 percent certainty that it was someone other than defendant, the jury should have the opportunity to consider the defense opinion in deciding whether plaintiff's expert is exaggerating and cannot be trusted.

11

on the issue which is the subject of the opinion.[5] We are particularly persuaded by the reasoning of the United States Court of Appeal for the First Circuit in *Wilder v. Eberhart* (1st Cir. 1992) 977 F.2d 673, 677 (*Wilder*). Applying New Hampshire medical malpractice law, the *Wilder* court concluded that "inequities would abound" if a defendant could not rebut the plaintiff's prima facie case without actually proving an alternative cause:

"For example, if ninety-nine out of one hundred medical experts agreed that there were four equally possible causes of a certain injury, A, B, C and D, and plaintiff produces the one

---

[5]    (E.g., *R.J. Reynolds Tobacco Co. v. Mack* (Fla.Dist.Ct.App. 2012) 92 So.3d 244, 248 ["[b]y excluding [defendant's] alternative causation evidence on the basis that its experts could not testify to a reasonable degree of medical probability, the trial court improperly shifted the burden of proof as to causation to [defendant]"]; *Williams v. Eighth Judicial Dist. Court of Nev.* (Nev. 2011) 262 P.3d 360, 362-363 ["when a defense expert's testimony of alternative causation theories controverts an element of the plaintiff's prima facie case where the plaintiff bears the burden of proof, the testimony need not be stated to a reasonable degree of medical probability"]; *Roy v. St. Lukes Medical Center* (Wis.Ct.App. 2007) 741 N.W.2d 256, 264 [" 'Although the party with the burden of proof must produce testimony based upon reasonable medical probabilities, the opposing party is not restricted to this requirement and may attempt to weaken the claim for injuries with medical proof couched in terms of possibilities.' [Citation]."]; *Sakler v. Anesthesiology Assocs. P.S.C.* (Ky.Ct.App. 2001) 50 S.W.3d 210, 214 ["expert testimony [offered to less than a reasonable probability] is admissible on behalf of defendants in medical malpractice cases in order to rebut the testimony of plaintiffs upon whom the burden of proof rests"].)

expert who conclusively states that A was the certain cause of his injury, defendant would be precluded from presenting the testimony of any of the other ninety-nine experts, unless they would testify conclusively that B, C, or D was the cause of injury. Even if all of defendant's experts were prepared to testify that any of the possible causes A, B, C or D, could have equally caused plaintiff's injury, so long as none would be prepared to state that one particular cause, other than that professed by plaintiff more probably than not caused plaintiff's injury, then defendant's experts would not be able to testify at all as to causation. . . . [This] would be manifestly unjust and unduly burdensome on defendants." (*Wilder*, *supra*, 977 F.2d at p. 677.)

Complex questions of medical causation are prone to uncertainty. (See, e.g., *Ortho Pharmaceutical*, *supra*, 163 Cal.App.3d at p. 403.) As *Wilder* illustrates, to allow testimony from a sincere but overconfident expert, but not from an equally sincere expert harboring reasonable doubts, risks closing the courtroom door to scientific consensus (or the absence thereof). It is therefore imperative that the party without the burden of proof be allowed to suggest alternative causes, or the uncertainty of causation,[6] to less than a reasonable medical probability.

---

[6] We note that the trial court advised Zimmer that, if its expert could "state with a reasonable degree of medical certainty that no doctor can say that a cause exist[s] here[,] that is admissible." This does not solve the problem. First, it still imposes on the defendant the burden of proof on causation because it requires the defendant to show that something is more likely than not. Second, it asks the impossible of a rebuttal expert who, by definition, is responding to the testimony of an expert who has said exactly what the trial court would require the rebuttal expert to testify no doctor could say.

To withhold such information from the jury is to deprive it of relevant information in assessing whether the plaintiff has met its ultimate burden of persuasion. And, it would improperly transfer from the jury to the court the responsibility for resolving conflicts between competing expert opinions. (See *Sargon, supra,* 55 Cal.4th at p. 772 [not the role of court to resolve scientific controversies]; *Davis v. Honeywell Internat. Inc.* (2016) 245 Cal.App.4th 477, 480 ["it is for the jury to resolve the conflict between . . . any competing expert opinions"]; see also CACI 221 [role of jury to resolve disagreements between experts].)

This is not to say that a trial court must accept every opinion offered by a defense expert, no matter how speculative. To the contrary, an " 'expert's opinion may not be based "on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors . . . ." ' " (*Sargon, supra,* 55 Cal.4th at p. 770.)[7] But, Kline's arguments notwithstanding, just

_____

[7] Here, for example, the trial court conditionally excluded testimony that a Vitamin D deficiency could cause pain of the nature Kline was experiencing where there was insufficient evidentiary support for the conclusion that Kline actually had a Vitamin D deficiency and the record evidence indicated he, in fact, did not have any such deficiency. This was a proper exercise of the court's gatekeeping role under Evidence Code section 801, subdivision (b). (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117 ["an expert's opinion that something *could* be true if certain assumed facts are true, *without any foundation for concluding those assumed facts exist in the case before the jury*, does not provide assistance to the jury because the jury is charged with determining what occurred in the case before it, not hypothetical possibilities"] (italics added).) In contrast, where the evidence showed, for example, that Kline

because an opinion does not reach the reasonable medical probability threshold does not render it speculative.  Less than a reasonable probability is a wide spectrum that begins at 50 percent likely and ends at impossible.  (See *Ortho Pharmaceutical, supra*, 163 Cal.App.3d at p. 403.)  While the trial court has discretion to determine the point at which an opinion becomes speculative, subject to the applicable provisions of the Evidence Code, that threshold is necessarily shy of the 50 percent likelihood cutoff imposed on Zimmer in this case.

### 3. Excluding Zimmer's Proffered Expert Testimony Solely Because It Was Not Expressed to a Reasonable Medical Probability Requires Reversal Under the Circumstances

An appellant seeking reversal based on the erroneous exclusion of evidence ordinarily "must show that a different result was probable if the evidence had been admitted." (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1223.) This rule is compelled by article VI, section 13, of the California Constitution, section 353 of the Evidence Code, and section 475 of the Code of Civil Procedure.

However, the rule does not apply where the error is deemed "structural."  Such an error typically occurs when the trial court deprives a party of its due process right to a fair trial. (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 534.) A structural error is one that "affect[s] 'the framework within which the trial proceeds, rather than simply an error in the trial process itself,' thus affecting the entire conduct of the trial from

experienced lower back pain, suffered from arthritis, and was overweight, the trial court erred in excluding expert testimony that these factors could have caused his pain.

15

beginning to end.  [Citation.]  Structural errors require per se reversal 'because it cannot be fairly determined how a trial would have been resolved if the grave error had not occurred.' " (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 950.)  The effects of such an error are not susceptible to measurement and therefore defy analysis by harmless error standards.  (*Id.* at p. 951.)

One element of a fair trial is the right to offer admissible evidence on a material issue.  (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357, superseded by statute on other grounds as stated in *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 840.)  Therefore, improper exclusion of expert testimony can amount to structural error when it deprives a party of this right.

Zimmer cites *People* ex rel. *Depart. of Transportation v. Clauser/Wells Partnership* (2002) 95 Cal.App.4th 1066 (*Clauser/ Wells*) for the proposition that improper exclusion of expert testimony may warrant reversal.  *Clauser/Wells* was an eminent domain action in which the sole issue was the value of the defendant's business inventory.  The defendant and the plaintiff (Caltrans) each proffered expert testimony on the topic. According to Caltrans's expert, the inventory was worth $439,220; according to the defendant's expert, it was worth $2,178,390.  The trial court excluded Caltrans's expert's opinion entirely, leaving Caltrans with no expert testimony at trial. The jury returned a verdict for the defendant for $2,178,390. (*Id.* at pp. 1069–1070.)  After concluding the court erred in excluding Caltrans's expert testimony, the appellate court found prejudice per se.  It explained:  " 'It is prejudicial error to exclude relevant and material expert evidence where a proper foundation for it has been laid, and the proffered testimony is within the

proper scope of expert opinion.' " (*Clauser/Wells, supra,* 95 Cal.App.4th at p. 1086.)

Similarly, the court in *Gordon v. Nissan Motor Co. Ltd.* (2009) 170 Cal.App.4th 1103 (*Nissan*) found reversible error per se when the trial court erroneously excluded expert testimony necessary to establish the plaintiff's theory of liability. (*Id.* at p. 1116.) The *Nissan* court stated: "when a trial court erroneously denies *all* evidence relating to a claim, or *essential* expert testimony without which a claim cannot be proven, the error is reversible per se because it deprives the party offering the evidence of a fair hearing and of the opportunity to show actual prejudice. [Citations.]" (*Id.* at p. 1114.) We find that the same is true when the trial court erroneously excludes expert testimony which is essential to mounting a defense.

In this case, the issue of causation was beyond experience of laypeople. As such, it was the proper subject of expert testimony. (Evid. Code, § 801, subd. (a).) The trial court properly admitted Kline's expert testimony on the subject but erroneously excluded Zimmer's. As a result, Zimmer was unable to offer any expert testimony, notwithstanding that it had proffered admissible and material testimony that the jury was entitled to hear. This resulted in a one-sided presentation of evidence. By its nature, unrebutted expert testimony is susceptible to being accepted at face value.[8] The result of the original trial in *Clauser/Wells* illustrates this: when only one expert testified to

---

[8] Zimmer's counsel made this point to the trial court, explaining that excluding its causation evidence offered to less than a reasonable medical probability would leave Kline's expert the sole witness on the topic—a result akin to "directing a verdict."

value, the jury returned a verdict in the exact amount suggested by that expert. (*Clauser/Wells*, *supra*, 95 Cal.App.4th at p. 1070.) Indeed, Kline recognized the advantage of having the only expert at trial and capitalized on it. For example, in closing argument, Kline's trial counsel highlighted that there was no rebuttal to Kline's expert's testimony that "the only cause of [Kline's] problems [wa]s the surgery." "Who came in to refute that?" he asked. "Nobody," he answered.

The trial court's categorical exclusion of Zimmer's expert testimony on a central issue, which was beyond the experience of laypeople, deprived Zimmer of a fair trial and therefore constitutes structural error. (Cf. *Brown v. Colm* (1974) 11 Cal.3d 639, 647 ["[T]he exclusion of the sole expert relied upon by a party because of an erroneous view of his qualifications is, in a case where expert testimony is essential, an abuse of discretion as a matter of law requiring reversal"].) We therefore reverse and remand for a new trial without considering what verdict would probably have been returned if the defense expert's testimony had been admitted. (*Aulisio v. Bancroft* (2014) 230 Cal.App.4th 1516, 1527 [" 'A structural error requires reversal without regard to the strength of the evidence or other circumstances.' "].)

As Zimmer's other points of error are not necessary to our disposition of this appeal, we decline to address them.

## DISPOSITION

The judgment is reversed.  We remand for a retrial on those same issues we ordered retried in *Zimmer I*, i.e., Kline's damages caused by the design defect of the Durom Cup.  Zimmer is entitled to its costs on appeal.

**CERTIFIED FOR PUBLICATION**


HARUTUNIAN, J.[*]

We concur:


STRATTON, P. J.


GRIMES, J.

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.